<u>NOT FOR PUBLICATION</u>

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| KATHERINE M. CONYACK, | Case No.: 2:17-cv-02487 (PAZ) |
| Plaintiff, | **OPINION** |
| v. | |
| ANDREW SAUL,<br>Commissioner of Social Security, | |
| Defendant. | |

**APPEARANCES:**

JAMES LANGTON
LANGTON & ALTER, ESQS.
1600 ST. GEORGES AVENUE
P.O. BOX 1798
RAHWAY, N.J. 07065
         On behalf of Plaintiff

MARY ANN MULLANEY                    RACHEL E. LICAUSI
SOCIAL SECURITY ADMINISTRATION       SOCIAL SECURITY ADMINISTRATION
OFFICE OF THE GENERAL COUNSEL        OFFICE OF GENERAL COUNSEL
300 SPRING GARDEN ST., 6TH FLOOR     300 SPRING GARDEN STREET, 6TH FLOOR
PHILADELPHIA, P.A. 19123             PHILADELHIA, P.A. 19123
         On behalf of Defendant              On behalf of Defendant

**PAUL A. ZOSS, United States Magistrate Judge.**

This matter comes before the Court pursuant to Section 205(g) of the Social Security Act,

as amended, 42 U.S.C. § 405(g), regarding the applications of Plaintiff Katherine M. Conyack for

Disability Insurance Benefits ("DIB") under Title II of the Social Security Act (42 U.S.C. §§ 401,

et seq.) and Supplemental Security Income ("SSI") under Title XVI of the Social Security Act (42

U.S.C. §§ 1381, et seq.). Plaintiff appeals from the final decision of the Administrative Law Judge

1

("ALJ") denying the applications; Defendant, the Commissioner of Social Security ("the Commissioner"), opposes Plaintiff's appeal.[1]  After careful consideration of the record, including the ALJ hearing transcripts, the ALJ's decision, and the pleadings and memoranda of the parties, the Court decides this matter pursuant to Rule 78(b) of the Federal Rules of Civil Procedure and Local Civil Rule 9.1(f).  For the reasons set forth below, the Court reverses the Commissioner's decision that Plaintiff was not disabled, and remands the case in accordance with the following instructions.

## I.    PROCEDURAL HISTORY

On July 27, 2012, Plaintiff filed applications for DIB and SSI alleging a disability onset date of March 15, 2008.  On July 12, 2013, the Commissioner determined that Plaintiff was not disabled and denied the applications.  (R. 64, 79.)[2]  On November 29, 2013, Plaintiff's applications were denied on reconsideration.  (R. 94, 114.)  On July 29, 2015, an Administrative Law Judge held a hearing on Plaintiff's applications; Plaintiff was represented at the hearing by a non-attorney from Legal Services of New Jersey.  (R. 33-63, 252.)  On August 13, 2015, the ALJ issued a decision denying Plaintiff's applications.  (R. 13-31.)  On February 13, 2017, the Appeals Council denied Plaintiff's request for review (R. 1-5), thereby affirming the ALJ's decision as the "final" decision of the Commissioner.  On April 11, 2017, Plaintiff timely filed this appeal pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3).  ECF No. 1.  On April 24, 2017, Plaintiff consented to have a U.S. Magistrate Judge conduct all further proceedings in the case to disposition pursuant to 28

---

[1] On June 17, 2019, Andrew Saul was sworn in as Commissioner of Social Security for a six-year term that expires on January 19, 2025.  Mr. Saul is therefore substituted as Defendant in his official capacity.

[2] "R." refers to the continuous pagination of the administrative record on appeal.  ECF No. 8.

U.S.C. § 636(c) and Rule 73 of the Federal Rules of Civil Procedure.  ECF No. 6.[3]  On April 25,

2019, the case was reassigned to the undersigned Magistrate Judge.  ECF No. 21.

## II.    LEGAL STANDARD

### A.    Standard of Review

In reviewing applications for Social Security disability benefits, this Court has the authority

to conduct a plenary review of legal issues decided by the ALJ.  *Knepp v. Apfel*, 204 F.3d 78, 83

(3d Cir. 2000).  In contrast, the Court reviews the ALJ's factual findings to determine if they are

supported by substantial evidence.  *Sykes v. Apfel*, 228 F.3d 259, 262 (3d Cir. 2000); *see also* 42

U.S.C. §§ 405(g) & 1383(c)(3).  Substantial evidence "does not mean a large or considerable

amount of evidence, but rather such relevant evidence as a reasonable mind might accept as

adequate to support a conclusion."  *Pierce v. Underwood*, 487 U.S. 552, 565 (1988) (citation and

internal quotations omitted); *see K.K. ex rel. K.S. v. Comm'r of Soc. Sec.*, No. 17-2309 (JLL), 2018

WL 1509091, at *4 (D.N.J. Mar. 27, 2018).  Substantial evidence is "less than a preponderance of

the evidence, but 'more than a mere scintilla.'"  *Bailey v. Comm'r of Soc. Sec.*, 354 F. App'x 613,

616 (3d Cir. 2009) (citations and quotations omitted); *see K.K.*, 2018 WL 1509091, at *4.

The substantial evidence standard is a deferential one, and the ALJ's decision cannot be

set aside merely because the Court "acting de novo might have reached a different conclusion."

*Hunter Douglas, Inc. v. NLRB*, 804 F.2d 808, 812 (3d Cir. 1986); *see*, *e.g.*, *Fargnoli v. Massanari*,

247 F.3d 34, 38 (3d Cir. 2001) ("Where the ALJ's findings of fact are supported by substantial

evidence, we are bound by those findings, even if we would have decided the factual inquiry

differently.") (citing *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999)); *K.K.*, 2018 WL

---

[3] Defendant has provided general consent to Magistrate Judge jurisdiction in cases seeking review of the Commissioner's decision.  *See* Standing Order In re: Social Security Pilot Project (D.N.J. Apr. 2, 2018).

1509091, at *4 ("'[T]he district court ... is [not] empowered to weigh the evidence or substitute its conclusions for those of the fact-finder.'") (quoting *Williams v. Sullivan*, 970 F.2d 1178, 1182 (3d Cir. 1992)).

Nevertheless, the Third Circuit cautions that this standard of review is not "a talismanic or self-executing formula for adjudication." *Kent v. Schweiker*, 710 F.2d 110, 114 (3d Cir. 1983) ("The search for substantial evidence is thus a qualitative exercise without which our review of social security disability cases ceases to be merely deferential and becomes instead a sham."); *see Coleman v. Comm'r of Soc. Sec.*, No. 15-6484 (RBK), 2016 WL 4212102, at *3 (D.N.J. Aug. 9, 2016). The Court has a duty to "review the evidence in its totality" and "take into account whatever in the record fairly detracts from its weight." *K.K.*, 2018 WL 1509091, at *4 (quoting *Schonewolf v. Callahan*, 972 F. Supp. 277, 284 (D.N.J. 1997) (citations and quotations omitted)); *see Cotter v. Harris*, 642 F.2d 700, 706 (3d Cir. 1981) (substantial evidence exists only "in relationship to all the other evidence in the record"). Evidence is not substantial if "it is overwhelmed by other evidence," "really constitutes not evidence but mere conclusion," or "ignores, or fails to resolve, a conflict created by countervailing evidence." *Wallace v. Sec'y of Health & Human Servs.*, 722 F.2d 1150, 1153 (3d Cir. 1983) (citing *Kent*, 710 F.2d at 114); *see K.K.*, 2018 WL 1509091, at *4. The ALJ decision thus must be set aside if it "did not take into account the entire record or failed to resolve an evidentiary conflict." *Schonewolf*, 972 F. Supp. at 284-85 (citing *Gober v. Matthews*, 574 F.2d 772, 776 (3d Cir. 1978)).

Although the ALJ is not required "to use particular language or adhere to a particular format in conducting [the] analysis," the decision must contain "sufficient development of the record and explanation of findings to permit meaningful review." *Jones v. Barnhart*, 364 F.3d 501, 505 (3d Cir. 2004) (citing *Burnett v. Comm'r of Soc. Sec.*, 220 F.3d 112, 119 (3d Cir. 2000));

*see K.K.*, 2018 WL 1509091, at *4. The Court "need[s] from the ALJ not only an expression of the evidence s/he considered which supports the result, but also some indication of the evidence which was rejected." *Cotter*, 642 F.2d at 705-06; *see Burnett*, 220 F.3d at 121 ("Although the ALJ may weigh the credibility of the evidence, [s/]he must give some indication of the evidence which [s/]he rejects and [the] reason(s) for discounting such evidence.") (citing *Plummer v. Apfel*, 186 F.3d 422, 429 (3d. Cir. 1999)). "[T]he ALJ is not required to supply a comprehensive explanation for the rejection of evidence; in most cases, a sentence or short paragraph would probably suffice." *Cotter*, 650 F.2d at 482. Absent such articulation, the Court "cannot tell if significant probative evidence was not credited or simply ignored." *Id.* at 705. As the Third Circuit explains:

> Unless the [ALJ] has analyzed all evidence and has sufficiently explained the weight [s/]he has given to obviously probative exhibits, to say that [the] decision is supported by substantial evidence approaches an abdication of the court's duty to scrutinize the record as a whole to determine whether the conclusions reached are rational.

*Gober*, 574 F.2d at 776; *see Schonewolf*, 972 F. Supp. at 284-85.

Following review of the entire record on appeal from a denial of benefits, the Court can enter "a judgment affirming, modifying, or reversing the decision of the [Commissioner], with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). Remand is appropriate if the record is incomplete or if the ALJ's decision lacks adequate reasoning or contains illogical or contradictory findings. *See Burnett*, 220 F.3d at 119-20; *Podedworny v. Harris*, 745 F.2d 210, 221-22 (3d Cir. 1984). Remand is also appropriate if the ALJ's findings are not the product of a complete review which "explicitly weigh[s] all relevant, probative and available evidence" in the record. *Adorno v. Shalala*, 40 F.3d 43, 48 (3d Cir. 1994) (internal quotation marks omitted); *see A.B. on Behalf of Y.F. v. Colvin*, 166 F. Supp.3d 512, 518 (D.N.J. 2016). A decision to "award benefits should be made only when the administrative record of the case has been fully developed

and when substantial evidence on the record as a whole indicates that the claimant is disabled and entitled to benefits." *Podedworny*, 745 F.2d at 221-22 (citation and quotation omitted); *see A.B.*, 166 F. Supp.3d at 518. In assessing whether the record is fully developed to support an award of benefits, courts take a more liberal approach when the claimant has already faced long processing delays. *See*, *e.g.*, *Morales v. Apfel*, 225 F.3d 310, 320 (3d Cir. 2000). An award is "especially appropriate when "further administrative proceedings would simply prolong [Plaintiff's] waiting and delay his ultimate receipt of benefits." *Podedworny*, 745 F.2d at 223; *see Schonewolf*, 972 F. Supp. at 290.

B.    **Standard for Awarding Benefits**

Under the Social Security Act, an adult claimant (i.e., a person over the age of eighteen) is disabled and eligible for Social Security disability benefits based on an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 20 C.F.R. §§ 404.1505(a), 416.905(a).[4] An impairment is "medically determinable" if it results from anatomical, physiological, or psychological abnormalities that can be shown by medically acceptable clinical and laboratory diagnostic techniques. Thus, an impairment can be established by objective medical evidence

---

[4] Disability Insurance Benefits (*see* 42 U.S.C. §§ 401, et seq.) and Supplemental Security Income (*see* 42 U.S.C. §§ 1381, et seq.) are separate programs under Title II and Title XVI, respectively, of the Social Security Act. Although they are subject to different qualification requirements, the standard for determining whether a claimant is disabled is the same for both programs. *See Rutherford v. Barnhart*, 399 F.3d 546, 551 n.1 (3d Cir. 2005) (citation omitted). The Court endeavors to provide citations to the applicable regulations for each program but may provide citations only to the disability insurance benefits regulations. *See Carmon v. Barnhart*, 81 F. App'x 410, 411 n.1 (3d Cir. 2003) (explaining that because "[t]he law and regulations governing the determination of disability are the same for both disability insurance benefits and [supplemental security income]," "[w]e provide citations only to the regulations respecting disability insurance benefits").

from an acceptable medical source, but cannot be established by a statement of symptoms, a diagnosis, or a medical opinion.  *Id*. §§ 404.1521, 416.921.

The process for determining an adult's claim for Social Security disability benefits involves a five-step sequential inquiry.  20 C.F.R. §§ 404.1520(a)(4), 416.920(a).[5]  The claimant bears the burden of proof at Steps One through Four.  At Step Five, the burden shifts to the Commissioner. *Id*. §§ 404.1512, 416.912; *see Holley v. Colvin*, 975 F. Supp.2d 467, 476-77 (D.N.J. 2013), *aff'd sub nom. Holley v. Comm'r of Soc. Sec.*, 590 F. App'x 167 (3d Cir. 2014).  At each Step, the ALJ must consider the combined effect of all the claimant's physical and mental impairments without regard to whether any single impairment, if considered separately, would be of sufficient severity to proceed to the next Step.  20 C.F.R. §§ 404.1523(c), 416.923(c).

At Step One, the ALJ decides whether the claimant is currently engaging in substantial gainful activity.  20 C.F.R. §§ 404.1520(b), 416.920(b).  Substantial gainful activity is work activity that involves doing significant physical or mental activities and is usually done for pay or profit.  *Id*. §§ 404.1572(a) & (b), 416.972(a) & (b).  If the claimant is engaging in such activity, then the inquiry ends because the claimant is not disabled.

"The [Step Two] inquiry is a de minimis screening device to dispose of groundless claims." *Newell v. Comm'r of Soc. Sec.*, 347 F.3d 541, 546 (3d Cir. 2003).  At this Step, the ALJ decides whether the claimant has a medically determinable impairment or a combination of such impairments that is severe.  20 C.F.R. §§ 404.1520(c), 416.920(c).  An impairment or combination of impairments is severe if it significantly limits a claimant's ability to perform basic work activities.  An impairment or combination of impairments is not severe if the claimant has a slight

---

[5] This case arises from a claim filed before March 27, 2017 and is therefore analyzed by this Court – as it was by the ALJ – under 20 C.F.R. §§ 404.1527 and 416.927.

abnormality or a combination of slight abnormalities that causes no more than minimal functional limitations. *Id*. §§ 404.1522, 416.922. If the claimant does not have a severe impairment or combination of impairments, then the inquiry ends because the claimant is not disabled.

At Step Three, the ALJ decides whether the claimant's impairment or combination of impairments "meets" or "medically equals" the severity of an impairment in the Listing of Impairments ("Listing") found at 20 C.F.R. § 404, Subpart P, Appendix 1. 20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925, 416.926. If the claimant's specific impairment is not listed, the ALJ will consider the most closely analogous listed impairment for purposes of deciding medical equivalence. *Id*. §§ 404.1526(b)(2), 416.926(b)(2). If the claimant has an impairment or combination of impairments that meets or medically equals a Listing, then the claimant is presumed to be disabled if the impairment or combination of impairments has lasted or is expected to last for a continuous period of at least 12 months. *Id*. §§ 404.1509, 416.909.

At Step Four, the ALJ must determine the claimant's residual functional capacity ("RFC"), determine the physical and mental demands of the claimant's past relevant work, and determine whether claimant has the level of capability needed to perform past relevant work. 20 C.F.R. §§ 404.1520(e) & (f), 416.920(e) & (f). RFC is the claimant's maximum remaining ability to do physical and mental work activities on a sustained basis despite limitations from his impairments. Past relevant work is work performed (either as the claimant actually performed it or as it is generally performed in the national economy) either within the last 15 years or within 15 years prior to the disability date. In addition, the work must have lasted long enough for the claimant to learn to do the job and be engaged in substantial gainful activity. *Id*. §§ 404.1560, 404.1565, 416.945, 416.960. If the claimant's RFC enables her/him to perform past relevant work, then the claimant is not disabled.

At Step Five, the ALJ must decide whether the claimant, considering her/his RFC, age, education, and work experience, can perform other jobs that exist in significant numbers in the national economy. 20 C.F.R. §§ 404.1520(g), 416.920(g). If the claimant is incapable of doing so, then s/he is presumed to be disabled if her/his impairment or combination of impairments has lasted or is expected to last for a continuous period of at least twelve months.

In deciding the claimant's ability to perform other jobs that exist in significant numbers in the national economy, the ALJ must consider whether the claimant's impairment and symptoms result in exertional and/or non-exertional limitations. The classification of a limitation as exertional is related to the United States Department of Labor's classification of jobs by various exertion levels (sedentary, light, medium, heavy, and very heavy) in terms of the strength demands for sitting, standing, walking, lifting, carrying, pushing, and pulling. *Id*. §§ 404.1569a(a) & (b), 416.969a(b). Non-exertional limitations affect a claimant's ability to meet all other demands of a job (i.e., non-strength demands), including but not limited to difficulty performing postural or manipulative functions such as reaching, stooping, climbing, crawling, crouching, handling, or fingering; difficulty tolerating environmental or physical features of certain work settings such as dust or fumes; or difficulty maintaining concentration or understanding detailed instructions. *Id*. at §§ 404.1569a(c), 416.969a(c).

If the claimant has no non-exertional limitations and can perform all or substantially all exertion demands at a given level, then the ALJ must use the Medical-Vocational Rules (also referred to as "Grid Rules") found at 20 C.F.R. § 404, Subpart P, Appendix 2. 20 C.F.R. §§ 404.1569a(b), 416.969a(b). The Grid Rules reflect various combinations of RFC, age, education, and work experience, and direct a finding of disabled or not disabled for each combination. If the claimant also has any non-exertional limitations or cannot perform

substantially all the exertional demands at a given level, then the Grid Rules are used as a framework for decision-making unless there is a rule that directs a conclusion of disabled without considering the additional non-exertional or exertional limitations. *Id*. §§ 404.1569a(d), 416.969a(d). If the claimant has solely non-exertional limitations, then the Grid Rules provide a framework for decision-making. *Id*. §§ 404.1569a(c), 416.969a(c).

## III.    ALJ DECISION AND APPELLATE ISSUES

Plaintiff was thirty-nine years old on March 15, 2008 (alleged onset date), and the date last insured was December 31, 2008. (R. 18, 65.) At Step One, the ALJ found that Plaintiff had not engaged in substantial gainful activity since the alleged onset date. (R. 18.) At Step Two, the ALJ found that Plaintiff had the following severe impairments: affective disorder, history of alcohol abuse, status-post left breast cancer with residual left arm pain and residual blurred vision. The ALJ also found at Step Two that Plaintiff had no orthopedic impairments that were severe. (R. 18.) At Step Three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that meets or medically equals the severity of any Listing. (R. 19.) At Step Four, the ALJ found that Plaintiff had the residual functional capacity to perform light work subject to various exertional and non-exertional limitations. (R. 20.) The ALJ also found at Step Four that Plaintiff had no past relevant work. (R. 23.) At Step Five, the ALJ found that a finding of not disabled would be directed by Grid Rule 202.20 if Plaintiff had the RFC to perform the full range of light work. The ALJ also found at Step Five that at least 3 jobs – inspector/hand packager, photocopy machine operator, sealing and canceling machine operator – existed in significant numbers in the national economy and could be performed by an individual with Plaintiff's age, education, work experience, and RFC. (R. 24.) The ALJ concluded that Plaintiff was not disabled from the alleged onset date through August 13, 2015 (decision date). (R. 24.) Plaintiff contends

that the ALJ committed reversible error because neither the Step Three finding nor the Step Four RFC finding is supported by substantial evidence. Plaintiff asks the Court to reverse and remand for payment or, alternatively, for a new hearing.[6] Defendant contends that the ALJ's decision should be affirmed in its entirety because it correctly applied the governing legal standards, reflected consideration of the entire record, and was supported by sufficient explanation and substantial evidence.

## IV.    SUMMARY OF RELEVANT EVIDENCE

### A.    Medical Evidence.

#### 1.    Treating Providers.

In September 2008, Dr. A.J. Scolomiero (family medicine) opined that Plaintiff had no physical limitations as to her ability to perform work-related activities. (R. 416-20, 421-25, 618-21.) In October 2008, nerve conduction studies of Plaintiff's bilateral lower extremities were suggestive of bilateral lumbosacral radiculopathy, but nerve conduction studies of Plaintiff's bilateral upper extremities were normal. (R. 406-14.) EMG findings were consistent with bilateral S1 radiculopathy, right worse than left. (R. 404-05.) A lumbar spine MRI revealed disc bulges at L4-5 and L5-S1, facet disease from L3 level onwards, and no significant spinal stenosis or severe neural foramen narrowing. (R. 403.) A cervical spine MRI revealed mild narrowing of the right neural foramen due to bony spurring at C3-4; right neural foramen narrowing by a disc osteophyte complex at C5-6; and straightening of the cervical spine possible due to muscle spasm. (R. 402.) In November 2008, Dr. Michael R. Czupak (chiropractic) evaluated Plaintiff for complaints of

---

[6] The "Opening Statement" section of Plaintiff's brief requests a remand for payment or, in the alternative, for a new hearing. ECF No. 15 at 1. The opening paragraph of the "Summary of Argument" section and the concluding paragraph of the Step Four argument request the same. *Id*. at 9, 36. The concluding paragraph of the "Summary of Argument" section requests only a remand for payment (*id*. at 15), and the concluding paragraph of the Step Three argument requests only a remand for a new hearing (*id*. at 25).

constant bilateral neck and low back pain.  He recommended that she be re-evaluated after one month of treatment three times per week, including therapeutic exercises, manual therapy, and interferential electric muscle stimulation.  He also recommended a pain management consultation due to long standing severe pain and daily use of over-the-counter medication.  (R. 398-401.)  In October 2010, and again in January 2013, Dr. Scolomiero opined that Plaintiff had no physical limitations as to her ability to perform work-related activities.  (R. 421-25, 618-21.)

Also in January 2013, Plaintiff was diagnosed with two malignant tumors in her left breast. In February 2013, Plaintiff was brought to the St. Barnabas Medical Center emergency room.  She complained about pain in her breast and requested narcotics.  She became belligerent when advised by hospital staff that narcotics were not an option given her elevated alcohol level and that she had arrived in an unconscious state.  Plaintiff was eventually given some Percocet and was subsequently discharged from the emergency room.  (R. 574-86.)  In April 2013, Plaintiff underwent a lumpectomy.  From July to September 2013, Plaintiff began four cycles of chemotherapy.  In September 2013, Plaintiff began endocrine therapy and thereafter began radiation therapy.  (R. 590-615, 810-57, 865-68.)

In February 2014, Plaintiff presented at the emergency room for pain in her breast and legs. Plaintiff stated that she had developed peripheral neuropathy secondary to chemotherapy.  She also stated that she had been pursuing pain management with her brother-in-law, Dr. David Conyack (pain medicine), but ran out of medication and could not follow-up with Dr. Conyack because he was no longer in her insurance plan.  Hospital personnel spoke with Dr. Conyack, who advised that Plaintiff was dismissed from his practice due to "breach of patient contract."  Hospital personnel also confirmed through Plaintiff's prescription records that on January 2, 2014, she received a prescription from her oncologist for a 30-day supply of morphine, and on January 14,

she received an identical prescription from Dr. Conyack. Plaintiff was discharged from the emergency room and referred to a new pain management physician. (R. 869-927.) Approximately one week later, Plaintiff was brought to the emergency room where she was treated for alcohol intoxication and complaints of pain in her breast and leg. She was released from the emergency room in police custody. (R. 928-974.) In December 2014, Plaintiff was treated in the emergency room for alcohol intoxication. (R. 975-1041.) In February 2015, Plaintiff was treated in the emergency room for alcohol intoxication and benzodiazepine abuse. (R. 1042-1125.)

Since October 2008, Dr. Srinivasa K. Rao (psychiatry) has treated Plaintiff monthly. Dr. Rao provided seven years of treatment notes for the period between Plaintiff's first appointment and July 2015. Each note is a single-page, pre-printed form marked with mostly illegible handwriting. In the "Comments" section, Dr. Rao consistently checked the box indicating that Plaintiff was meeting her treatment goals. (R. 645-809, 1132-45, 1147-52). Dr. Rao also provided multiple opinions regarding Plaintiff's mental impairments. In March and July 2010, and again in March 2011, Dr. Rao opined in connection with Plaintiff's application for state welfare benefits that she could not work and was fully disabled because of her bipolar diagnosis. (R. 725-26, 800-04.) In a May 2011 Psychiatric Report form, Dr. Rao checked the box indicating that he "cannot provide a medical opinion regarding this individual's ability to do work-related activities." (R. 70-05.) In October and December 2012, Dr. Rao advised in typewritten notes addressed "to whom it may concern" that he provided "medication management" for Plaintiff's chronic bipolar disorder and recommended "full social security disability." (R. 806-08 (noting that Plaintiff "is on an extreme amount of medication").) In July 2015, Dr. Rao completed a Mental Impairment Questionnaire (RFC & Listings) form. He indicated that Plaintiff's treatment response and prognosis for bipolar disorder were "equivocal." He identified seven prescribed medications and

handwrote the word "none" in response to a question seeking information about side effects.  Dr. Rao checked boxes corresponding to different symptoms, and he assessed a GAF of 60.  He also checked the boxes marked "[u]nable to meet competitive standards" to describe Plaintiff's mental abilities and aptitudes for unskilled, semiskilled, and skilled work.  Dr. Rao provided no explanations or supporting clinical findings.  In a section of the form that reproduced the paragraph B criteria of Listings 12.04 (Affective Disorders) and 12.06 (Anxiety-Related Disorders), Dr. Rao opined that Plaintiff had moderate limitations in activities of daily living, social functioning, and concentration, persistence, and pace; and that she experienced three repeated episodes of decompensation, each of extended duration.  He also opined via checkbox that Plaintiff met the paragraph C criteria of Listings 12.04 and 12.06.  (R. 1126-31.)

### 2. Non-Treating Providers.

In  December 2010, Plaintiff underwent a consultative examination with Dr. Alex Roy (psychiatrist) in connection with a previous Social Security disability benefits application. Plaintiff advised Dr. Roy that she suffered from bipolar disorder and was prescribed Abilify, Ambien, Seroquel, Trazodone, and Xanax.  When Dr. Roy reviewed the medication bottles that Plaintiff had brought with her to the appointment, he discovered that she was also prescribed Lithium and Topiramate.  Plaintiff stated that she had been seeing a psychiatrist on an outpatient basis for the last ten years.  She had three inpatient psychiatric admissions "in a time frame of about 5-7 years ago" when she was heavily drinking.  She also had three detox rehab admissions independent of the psychiatric admissions.  She had not consumed alcohol in a couple of years and no longer went to AA meetings.  She lived with her ex-husband and their (then) eight-year old daughter because Plaintiff had nowhere else to live, had no money, and could not work.  She last worked a couple of years ago in a clerical position and as a waitress.  She stopped working because

she could not handle the pressure.  She currently spent an average day making her bed, doing daily chores, making something to eat, and trying to help her daughter with homework.  Dr. Roy reported:  Plaintiff's mood was not too bad; her speech and thinking processes were normal; she was well-oriented to time person, and place; she demonstrated no clinical evidence of any serious memory problems in either immediate, intermediate, or long-term time frames; she seemed to have a reasonable fund of general information; she could follow the topic of a conversation; and she could follow instructions and do simple calculations.  Dr. Roy diagnosed bipolar disorder in partial remission with anxiety symptoms and alcohol dependence in long-term remission.  He assessed a GAF of 40 because Plaintiff seemed "to be cycling in and out of low-grade episodes throughout months."  (R. 426-28.)

In May 2013, Plaintiff underwent a consultative examination with Dr. Nicholas Tolchin (psychologist).  Plaintiff stated that she previously worked as a secretary but had been unemployed since 2005 or 2008 and currently received welfare.  She lived with her ex-husband from a second marriage and their daughter (who was then eleven years old) in his house; she also had another daughter (who was then eighteen years old) from a first marriage.  She was arrested three times for driving while intoxicated.  Although she admitted periods of heavy alcohol use throughout her life, she was not presently drinking.  Plaintiff advised that she suffered from insomnia and was recently diagnosed with breast cancer.  She listed as her current medications:  Abilify, Benztropine, Sertraline, Temazepam, Topiramate, Trazodone, and Xanax.  Plaintiff denied ever being an inpatient psychiatric patient and ever attempting suicide.  She advised that she has been an outpatient psychiatric patient "her entire adult life."  She described her current mental health as fluctuating cyclical moods:

> Depressive episodes are reportedly characterized by frequent tearfulness, disturbed sleep, decrease in appetite, decreased energy, diminished interest, social isolation,

and feeling hopeless. Manic episodes are reported to last anywhere from several hours to several days and are characterized by excessive energy, hyperarousal, racing thoughts, over productive speech, and diminished need for sleep.

She stated that could not dress, cook, clean, manage money, or operate a computer; nor did she bathe daily. Dr. Tolchin's mental status examination findings were as follows:

On examination, the claimant's demeanor and responsiveness to questions was cooperative. Her manner of relating, social skills, and overall presentation were inadequate. The claimant appeared her stated age. She was dressed casually. Hygiene and grooming were good. Gait and posture were normal. There was nothing noteworthy of her motor behavior. Eye contact was variable. The claimant's conversational speech was fluent and productive, as well as of normal rate, volume, and tone. Thought processes were logical and goal directed with no evidence of hallucinations, delusions, or paranoia in the evaluation setting. The claimant's mood was dysphoric. Her sensorium was clear. She was fully oriented to person, place, time, and situation. Attention and Concentration: The claimant's attention and concentration was impaired. She was only able to complete 2 parts of a 3-part command. She was only able to repeat 4 digits forward and 2 digits backward. She was able to spell the word "world" forward, but not backward. She struggled to complete mental arithmetic problems. She demonstrated rather concrete reasoning ability. Recent and Remote Memory Skills: The claimant's recent and remote memory skills were impaired. She was able to recall 3/3 objects immediately, but unable to recall any of those 3 objects after a 5-minute delay. She also struggled to provide detailed autobiographical information from her past. Cognitive Functioning: The claimant['s] intellectual functioning is estimated to be in the average to low average range. Her general fund of information is appropriate to her experience. The claimant's insight is poor. The claimant's judgment is poor.

Dr. Tolchin opined:

With regard to the daily function of the claimant, she is able to follow and understand simple directions and instructions. At this time, she may not possess adequate motivation to perform simple tasks. She appears to have difficulty maintaining attention and concentration. She will have difficulty learning new tasks and performing complex tasks independently. She will need support to maintain a regular schedule. Her difficulties appear attributable to mood disorder. The results of the present evaluation appear to be consistent with psychiatric problems, which may significantly interfere with the claimant's ability to function on a daily basis.

Dr. Tolchin recommended that Plaintiff "consult with a psychiatrist to explore possible psychotropic medications that may help alleviate the severity of her mental health symptoms." He

also recommended that she "consult with a mental health professional to develop coping strategies to maximize her functional capacity." He opined that her prognosis was guarded. (R. 587-89.)

In November 2013, Plaintiff underwent a consultative examination with Dr. Christine L. Zolli (ophthalmology). Dr. Zolli noted that Plaintiff complained about watery eyes. Dr. Zolli observed that Plaintiff had a "hard time reading close" and that her vision without correction was OD 20/25 and OS 20/20. All other physical examination findings were normal. Dr. Zolli opined: "Patient is actively being treated for breast cancer having completed chemotherapy and undergoing radiation that takes [a] toll on mucous membranes as conjunctive and that may be the cause of her tearing problem." Dr. Zolli diagnosed astigmatism and presbyopia, and she recommended bifocal glasses. (R. 860-63.)

Also in November 2013, State Agency reviewing consultants reaffirmed their July 2013 opinions that: Plaintiff's breast cancer did not meet the duration requirement; Plaintiff did not satisfy the paragraph B criteria for Listing 12.04 (Affective Disorders) because she had no repeated episodes of decompensation, each of extended duration, and she had moderate limitations in activities of daily living, social functioning, and concentration, persistence, and pace; and Plaintiff could follow simple instructions, attend and concentrate, keep adequate pace and persist, and relate and adapt to routine tasks in a work situation. (R. 65-78, 80-93, 95-113, 115-33.)

**B.**    **Non-Medical Evidence.**

In July 2015, Plaintiff testified at the hearing in response to questioning by her representative and by the ALJ. (R. 36-57.) The ALJ accurately summarized Plaintiff's testimony as follows:

> At the hearing, she testified that she does not drive as she has had DUIs and she is taking "heavy" medication. Medications include Zoloft, Xanax, etc. She sees her psychiatrist, Dr. Rao, once monthly. Medications help but she does have side effects, which include dizziness, drowsiness, and she does shake due to anxiety.

She has manic episodes and depression. She cannot work, as she cannot focus. She used to drink alcohol but she has been sober for about three years. She has several DUIs and she served a 6-month sentence in 2014.

The claimant testified that she had cancer in the left breast and she underwent mastectomy, chemotherapy and radiation. She has limitations in the left arm and raising it and reaching forward is painful. She has teary eyes and she does not know the cause. She had the cancer removed in 2013, she then had chemotherapy for six months and then 3-4 months of radiation.

She lives with her ex-husband and their 13-year old daughter. She tries to do things around the house such as cooking, cleaning and laundry. It takes days for her to finish laundry. It takes her a long time to do anything. She does attend church on the holidays. She volunteers to do clerical work occasionally, stuffing envelopes, but it takes her so long to complete, they have stopped using her.

On some days, she feels okay to function, on other days, her mind races and she cannot focus.

(R. 21.) In January 2013, Plaintiff's second ex-husband James Johnston submitted a Third-Party Function Report. (R. 322-39.) The ALJ accurately summarized the Report as follows: "Mr. Johnston reported that claimant lives with him as he was fearful that she would not be able to handle living alone. He reports that she does not do housework and that she prepares easy food such as sandwiches. He reminds her to shower and take her medication." (R. 22.)

## V.    DISCUSSION

### A.    Local Civil Rule 9.1(e).

The Local Rules for this District require that a plaintiff's brief in a Social Security disability appeal include a separate "statement of facts with reference to the administrative record." L. Civ. R. 9.1(e)(5)(C). Plaintiff's thirty-six page brief contains a one-paragraph section entitled "Procedural History/Statement of Facts" that contains a brief procedural history of Plaintiff's administrative claim but no statement of facts whatsoever. ECF No. 15 at 1-2; *see id*. at 3-36 (containing few, if any, record citations other than to the ALJ's decision). Moreover, Plaintiff's brief fails to comply in other respects with Local Civil Rule 9.1(e)(5). For example, there is no

meaningful "statement of the issues presented for review."  L. Civ. R. 9.1(e)(5)(A); *see* ECF No. 15 at 2 (one-sentence section entitled "Issue" stating only that "[t]he primary determination for this Court is whether the Commissioner's decision is supported by substantial evidence").  An additional failing is that counsel's arguments are unnecessarily caustic.

Since May 4, 2018, the undersigned has decided twenty-six Social Security disability appeals in which the plaintiff was represented by Plaintiff's counsel in the present case.  The plaintiff's brief in each of those cases has had similar failings.  It is not the Court's burden to sift through Plaintiff's muddled arguments to determine the bases for appeal and then comb through the record searching for support.  Plaintiff's counsel, the law firm of Langton & Alter, Esqs., has been notified that any brief filed after May 13, 2019 that does not comply with Local Civil Rule 9.1(e) will be rejected, and any fees for re-briefing will not be credited when considering the reasonableness of fees for successful appeals.  *See Little v. Berryhill*, No. 2:17-cv-11708 (PAZ), 2019 U.S. Dist. LEXIS 82127, at *44-46 (D.N.J. May 13, 2019).  The Court reiterates such notification.  The Court will consider the effect, if any, that Plaintiff's counsel's failure to comply with Local Civil Rule 9.1(e) (and the corresponding burden placed on the Court) should have on any award of fees in this case and will adjust those fees accordingly.

    B.    <u>Scope.</u>

After the ALJ's decision was issued on August 13, 2015, Plaintiff directly submitted the following medical evidence to the Appeals Council:  records from Essex County Correctional Facility for February-August 2014 (R. 1153-1203); treatment summary from Turning Point dated August 14, 2014 (R. 1204-08); and discharge summary from Cope Center dated June 4, 2015 (R. 1209-11.)  The Appeals Council found that none of this evidence provided a basis for changing the ALJ's decision.  (R. 2, 4.)  "No statutory provision authorizes the district court to make a

decision on the substantial evidence standard based on new and material evidence never presented to the ALJ." *Matthews v. Apfel*, 239 F.3d 589, 594 (3d Cir. 2001). "The correctness of [the ALJ's] decision depends on the evidence that was before [her/]him. [S/h]e cannot be faulted for having failed to weigh evidence never presented to [her/]him." *Id*. at 592; *see Miller v. Comm'r Soc. Sec.*, 732 F. App'x 162, 165 (3d Cir. 2018) ("[A] district court 'cannot look to evidence never presented to the ALJ in determining whether that decision was supported by substantial evidence[.]'") (quotation omitted). The Court therefore finds that it cannot consider when reviewing the ALJ's decision any of the above-listed evidence. The Court also finds that Plaintiff has waived any request for remand under Sentence Six of 42 U.S.C. § 405(g) as to this evidence. *See Miller*, 732 F. App'x at 164-65 (by failing to seek Sentence Six remand from district court, "[claimant] waived the opportunity for her benefits ruling to be reviewed in light of the new evidence").

 **C.**   **Step Three.**

   **1.**  **Physical Impairments.**

 At Step Three, the ALJ found that Listing 13.10 (Breast Cancer) was not met because "[t]he claimant had partial mastectomy to remove two tumors from the left breast followed by chemotherapy and radiation treatments. There has been no recurrence." (R. 19.)[7] Plaintiff does not challenge this finding. Instead, Plaintiff complains that the ALJ did not consider residual left arm pain and residual blurred vision in combination with her mental impairments.[8] The Court

---

[7] The Court analyzes all Listing criteria, as did the ALJ, as of August 13, 2015, the date of the ALJ's decision. The applicable criteria are described in Social Security Administration Program Operations Manual System ("POMS") POMS DI 34133.013, *Cancer Listings from 7/20/15 to 1/1/6/17*, available at https://secure.ssa.gov/apps10/poms.nsf/lnx/0434133013; POMS DI 34132.009, *Mental Listings from 12/18/07 to 09/28/16*, available at https://secure.ssa.gov/apps10/poms.nsf/lnx/0434132009.

[8] Plaintiff's brief attributes the following quotation to 20 C.F.R. § 404.1526(a): "If you have more than one impairment and none of them meets or equals a listed impairment, we will review the symptoms, signs and laboratory findings about your impairments to determine whether the combination of your impairments is medically equal to any listed impairment." ECF No. 15 at 16. Defendant correctly observes that the citation

agrees.  Although the ALJ's decision included a detailed evidentiary discussion, the Court cannot meaningfully review the Step Three finding in this regard absent any explanation of the ALJ's reasoning.

Nevertheless, remand is warranted only if the ALJ's error was not harmless.  Plaintiff bears the burden of explaining how the ALJ's decision would be different but for the ALJ's error.  *See Woodson v. Comm'r of Soc. Sec.*, 661 F. App'x 762, 766 (3d Cir. 2016) (plaintiff must "explain[] how, even if the ALJ's analysis was lacking, the deficiency was harmful to [her/]his claims," including "affirmatively point[ing] to specific evidence that demonstrates [s/]he should succeed"); *Gullace v. Comm'r of Soc. Sec.*, No. 15-cv-7630 (FLW), 2017 WL 714356, at *10 (D.N.J. Feb. 23, 2017) (same) (citing *Woodson*).  Plaintiff does not explain why any combination of his impairments is medically equivalent to any specific Listing.  *See* ECF No. 15 at 19.  The Court therefore finds that any error in the ALJ's Step Three finding as to Plaintiff's breast cancer and residual impairments was harmless.  *See Holloman v. Comm'r of Soc. Sec.*, 639 F. App'x 810, 814 (3d Cir. 2016) (affirming Step Three finding where claimant complained "in vague terms that certain impairments were not properly compared" to Listings without identifying "specific avenues for meeting or equaling specific listings that the ALJ should have considered but did not"); *Poulos v. Comm'r of Soc. Sec.*, 474 F.3d 88, 93 (3d Cir. 2007) (affirming Step Three finding where claimant did not "point to any medical evidence ignored by the ALJ that would indicate that [claimant's] impairments are equivalent to one of the Listings the ALJ identified"); *Cosby v. Comm'r of Soc. Sec.*, 231 F. App'x 140, 146 (3d Cir. 2007) (affirming Step Three finding where

---

is incorrect.  The Court directs both parties to 20 C.F.R. § 404.1526(b)(3):  "If you have a combination of impairments, no one of which meets a listing (*see* § 404.1525(c)(3)), we will compare your findings with those for closely analogous listed impairments.  If the findings related to your impairments are at least of equal medical significance to those of a listed impairment, we will find that your combination of impairments is medically equivalent to that listing."

Plaintiff "does not point to any medical evidence ignored by the ALJ that would show that [claimant's] impairments medically equaled one of the listings").

### 2. Mental Impairments.

At Step Three, the ALJ also found that "[t]he severity of [Plaintiff's] mental impairments, considered singly and in combination, do not meet or medically equal the criteria of" Listings 12.04 (Affective Disorders) and 12.09 (Substance Addiction Disorders). Listing 12.04 is met when the criteria of *both* Paragraphs A and B are satisfied, *or* when the criteria of *only* Paragraph C are satisfied. *See* POMS DI 34132.009. Listing 12.09 can be met if Listing 12.04 is met. *See id.*[9] Plaintiff contends that the ALJ's finding is not supported by substantial evidence. The Court agrees.[10]

### a) Paragraph A.

Plaintiff correctly observes that "the A criteria of Listing 12.04 are not reviewed or compared with the evidence." ECF No. 15 at 19. Plaintiff asserts that the ALJ's evaluation of only the paragraph B and C criteria "admits the foregone conclusion" that the paragraph A criteria are satisfied. *See id.* at 24; *id.* at n.7 ("If plaintiff did not meet the elements of the A criteria there would be no reason to assess or even mention the B or C criteria. No psychiatric listing can be met or equal without satisfying the A criteria. According to the Commissioner's listings math, A+B=disability, A+C=disability, but B+C=an impossibility."). Plaintiff's assertion is wrong as a matter of fact because the ALJ's silence cannot be construed as a finding. Plaintiff's assertion is

---

[9] Thus, any reversible error in the ALJ's finding(s) as to Listing 12.04 would constitute reversible error as to Listing 12.09.

[10] Plaintiff further contends that she "is the medical equivalent of paragraph 12.04 of the Commissioner's listings" because she "meets the elements of 12.04A2, 12.04B and 12.04C according to her treating psychiatrist." ECF No. 15 at 24. The Court cannot conclude at this time that substantial evidence supports a finding either that Plaintiff meets Listing 12.04 as to any individual impairment or that a combination of impairments is medically equivalent in severity to Listing 12.04.

also wrong as a matter of law because – as Listing 12.04 existed when the ALJ's decision was issued – it was not necessary for the ALJ to discuss paragraph A after finding that Plaintiff did not satisfy the criteria of paragraphs B or C.  POMS DI 34132.009; *see Holloman*, 639 F. App'x at 813-14; *Nunez v. Comm'r of Soc. Sec.*, No. 2:14-cv-4664 (KM), 2015 WL 4770991, at *4 (D.N.J. Aug. 12, 2015).[11]

> *b)*     ***Paragraph B.***

To satisfy Paragraph B, a claimant must demonstrate marked limitations in at least two of the three functional categories or a marked limitation in one category together with repeated episodes of decompensation (each of extended duration).  POMS DI 34132.009.  A marked limitation means more than moderate but less than extreme and "may arise when several activities or functions are impaired, or even when only one is impaired, as long as the degree of limitation is such as to interfere seriously with [the claimant's] ability to function independently, appropriately, effectively, and on a sustained basis."  *Id.*, Listing 12.00C (citing 20 C.F.R. § 404.1520a).  "Episodes of decompensation" are exacerbations or temporary increases in symptoms or signs accompanied by a loss of adaptive functioning, as manifested by difficulties in performing activities of daily living, maintaining social relationships, or maintaining concentration, persistence, or pace."  *Id.*  "Repeated episodes" of "extended duration" means three episodes of decompensation within one year, or an average of once every four months, each lasting for at least two weeks.  *Id.*  The ALJ found that Plaintiff did not meet the paragraph B criteria because she had moderate difficulties in each of the three functional categories and no episodes of decompensation which have been of extended duration.  (R. 19.)  Plaintiff contends that substantial

---

[11] As discussed below, the case must be remanded for a new paragraph B finding.  The ALJ must consider paragraph A on remand if the paragraph B criteria are satisfied.

evidence does not support the ALJ's paragraph B findings and that the case "must be reversed and remanded for a new hearing to include testimony of a psychiatric medical advisor of the Commissioner's choosing and a new administrative decision."  ECF No. 15 at 25.

As a threshold matter, the Court finds that the ALJ did not err by ascribing little weight to Dr. Rao's July 2015 opinion that Plaintiff had marked limitations in all three functional categories and three episodes of decompensation, each of extended duration.  (R. 23.)  The ALJ correctly observed that "[t]reatment records consistently indicate that the claimant is meeting goals and there is no evidence of ongoing psychosis."  (R. 23.)  The Court additionally observes that Dr. Rao included few, if any, substantive notations in nearly seven years of monthly treatment "notes."  In May 2011, Dr. Rao stated that he could not provide a medical opinion regarding Plaintiff's ability to do work-related activities.  In contrast, Dr. Rao opined on five occasions – March and July 2010, March 2011, and October and December 2012 – that Plaintiff was completely disabled and unable to work.  Dr. Rao pointed to no specific evidence in support of these opinions beyond Plaintiff's bipolar disorder diagnosis.

For purposes of paragraph B, activities of daily living "include adaptive activities such as cleaning, shopping, cooking, taking public transportation, paying bills, maintaining a residence, caring appropriately for your grooming and hygiene, using telephones and directories, and using a post office."  POMS DI 34132.009, Listing 12.00C1.  The ALJ found that Plaintiff had moderate restriction because:  "The claimant testified that she lives with her ex-husband and 13-year old daughter.  She does do cooking, cleaning and laundry.  She does not go grocery shopping.  It takes days for her to finish the laundry.  She likes to spend time with her daughter, watching television."  (R. 20.)  The Court cannot meaningfully review the ALJ's finding for two reasons.  First, the ALJ's decision did not discuss Plaintiff's statements to Drs. Roy and Tolchin regarding her daily living

activities – and thus did not explain how those statements were considered at Step Three. (R. 22.) Second, the ALJ's decision noted the statements offered by Plaintiff's ex-husband regarding her daily activities but did not explain how those statements were considered at Step Three. (R. 22.)

For purposes of paragraph B, "social functioning" refers to the claimant's "capacity to interact independently, appropriately, effectively, and on a sustained basis with other individuals." POMS DI 34132.009, Listing 12.00C2. More specifically:

> Social functioning includes the ability to get along with others, such as family members, friends, neighbors, grocery clerks, landlords, or bus drivers. You may demonstrate impaired social functioning by, for example, a history of altercations, evictions, firings, fear of strangers, avoidance of interpersonal relationships, or social isolation. You may exhibit strength in social functioning by such things as your ability to initiate social contacts with others, communicate clearly with others, or interact and actively participate in group activities. We also need to consider cooperative behaviors, consideration for others, awareness of others' feelings, and social maturity. Social functioning in work situations may involve interactions with the public, responding appropriately to persons in authority (e.g., supervisors), or cooperative behaviors involving coworkers.

*Id.*[12] The ALJ found that Plaintiff had moderate difficulties: "There is no evidence of psychosis. The claimant does have a history of alcohol abuse. She testified that it was in remission for about three years; however, she had emergency room visits on December 23, 2014 and February 25, 2015 due to falling caused by alcohol intoxication (Exhibit B19F, pgs. 2, 46)." (R. 19.) The Court agrees with Plaintiff that the ALJ failed to explain adequately the connection between Plaintiff's history of alcohol abuse and any limitations in this functional category. Accordingly, the Court cannot meaningfully review the ALJ's finding.

For purposes of paragraph B, "concentration, persistence, or pace" refers to the claimant's ability "to sustain focused attention and concentration sufficiently long to permit the timely and

---

[12] Plaintiff invokes the definition of "interact with others" pursuant to current Listing 12.00E2 (*see* ECF No. 15 at 20 & n.4), but that Listing was not in effect on the ALJ's decision date.

appropriate completion of tasks commonly found in work settings."  POMS DI 34132.009, Listing

12.00C3.  The ALJ found that Plaintiff had moderate difficulties:

> When examined by Dr. Tolchin in March 2013, during the time the claimant was initially diagnosed with breast cancer, her concentration and attention were impaired (Exhibit B7F).  A review of treating psychiatrist, Dr. Rao's treatment records at Exhibit B10F do not specify attention or concentration problems.  However, in a mental impairment questionnaire he reported that "yes," she has difficulty thinking or concentrating.  The claimant testified that she can perform household tasks, but it takes her longer to complete tasks.

(R. 19.)  The Court cannot meaningfully review the ALJ's finding for two reasons.  First, the ALJ

noted Dr. Tolchin's opinion that Plaintiff's "attention and concentration were impaired" and that

"at this time, she may not possess adequate motivation to perform simple tasks."  (R. 22.)  The

ALJ ascribed little weight to this opinion "because [Plaintiff] had recently been diagnosed with

breast cancer and it appears likely that her mental state was clouded by her serious medical

condition."  (R. 22 (suggesting that Plaintiff's "emotional status was eroded further by the

diagnosis of breast cancer).)  The Court finds that the ALJ's assessment of Dr. Tolchin's opinion

in this regard is impermissibly based on the ALJ's lay speculation and without regard to Dr.

Tolchin's further opinion that Plaintiff's "difficulties appear attributable to mood disorder" and

that his evaluation results "appear to be consistent with psychiatric problems."  (R. 587-89.)

Second, the ALJ's decision did not discuss Dr. Tolchin's opinion that Plaintiff would need support

to maintain a regular schedule – and thus did not explain how those statements were considered at

Step Three.

As to decompensation, the ALJ found that Plaintiff "has experienced no episodes of

decompensation, which have been of extended duration."  (R. 19.)  Plaintiff was treated in the

emergency room once in February 2013, once in February 2014, once in December 2014, and once

in February 2015.[13]    Accordingly, she did not experience either repeated episodes of decompensation or episodes of extended duration.  The Court therefore finds that substantial evidence supports the ALJ's finding that Plaintiff did not satisfy the fourth paragraph B criterion.

In sum, the Court finds that substantial evidence does not support the ALJ's finding that Plaintiff had moderate limitations in each of paragraph B's three functional categories.  The Court expresses no opinion as to whether Paragraph B is satisfied and remands for the ALJ to explain the assessment of all relevant evidence.

### c)    *Paragraph C.*

Paragraph C of Listing 12.04 requires:

> Medically documented history of a chronic affective disorder of at least 2 years' duration that has caused more than a minimal limitation of ability to do basic work activities, with symptoms or signs currently attenuated by medication or psychosocial support, and one of the following:
>
> 1.  Repeated episodes of decompensation, each of extended duration; or
>
> 2.  A residual disease process that has resulted in such marginal adjustment that even a minimal increase in mental demands or change in the environment would be predicted to cause the individual to decompensate; or
>
> 3.  Current history of 1 or more years' inability to function outside a highly supportive living arrangement, with an indication of continued need for such an arrangement.

POMS DI 34132.009; *see id.*, Listing 12.00F ("[h]ighly structured and supportive settings may also be found in [the] home").  The ALJ stated:  "I have also considered whether the 'paragraph C' criteria are satisfied.  In this case, the evidence fails to establish the presence of the 'paragraph C' criteria."  (R. 20.)  As discussed above, substantial evidence does not support a finding that

---

[13] Plaintiff was hospitalized in April 2013 for her lumpectomy and treated in the emergency room a second time in February 2014.  Medical records for those incidents reflect no evidence of alcohol intoxication or need for psychiatric assistance.

Plaintiff suffered repeated episodes of decompensation, each of extended duration, during the relevant period. However, the Court cannot meaningfully review the ALJ's finding that Plaintiff does not satisfy the remaining paragraph C criteria.

The record indicates that Plaintiff has lived with her second ex-husband, Mr. Johnston, for many years. The ALJ may consider evidence from spouses to show the severity of a claimant's impairment and how it affects the claimant's ability to work. 20 C.F.R. § 404.113(d)(4); *see* Social Security Ruling 06-03p, *Titles II & XVI: Considering Opinions And Other Evidence From Sources Who Are Not "Acceptable Medical Sources" In Disability Claims*, 2006 WL 2329939 (S.S.A. Aug. 9, 2006).)[14] Although the ALJ's decision acknowledged Mr. Johnston's January 2013 Third-Party Function Report and concerns about Plaintiff's inability to live alone, the ALJ did not ascribe any specific weight to Mr. Johnston's statements, did not permit Mr. Johnston to testify during the hearing, and did not explain how Mr. Johnston's opinion was assessed specifically in context of the third paragraph C criterion. The Court expresses no opinion as to whether this criterion is satisfied and remands for the ALJ to explain the assessment of all relevant evidence.

### D.   Step Four.

At Step Four, the ALJ found that Plaintiff has the RFC to perform light work "except occasional reaching with the left arm; frequent near visual acuity; simple, routine, repetitive tasks; occasional contact with supervisors, coworkers and general public; and off task up to 10% of the workday." (R. 20.) Plaintiff argues that the RFC finding is not supported by substantial evidence. The Court partially agrees.

---

[14] Social Security Ruling 06-03p was rescinded after a revision to the regulation governing evidentiary assessment in claims filed after March 27, 2017. *See* 82 Fed. Reg. 15263-01, 2017 WL 1105348 (Mar. 27, 2017)

Plaintiff correctly asserts that light work requires lifting and carrying frequently (between one-third and two-thirds of an eight-hour workday) up to ten pounds and occasionally (no more than one-third of an eight-hour workday) between ten and twenty pounds. Plaintiff questions how a person limited to "occasional reaching with the left arm" could fulfill these lifting and carrying requirements. Plaintiff further questions how such a person could handle, grasp, or manipulate objects the remainder of the workday. ECF No. 15 at 28-29. The Court finds that any error as to the RFC's lifting, carrying, or reaching limitations was harmless, because the VE testified that a hypothetical individual with Plaintiff's age, education, work experience, and RFC – including a limitation to occasional reaching with the left arm – could perform at least three jobs that existed in significant numbers in the national economy.

The ALJ found that was Plaintiff was limited to frequent near visual acuity – meaning that Plaintiff's ability to see close objects was limited to between one-third and two-thirds of an eight-hour workday – "based on complaints of teary vision." (R. 22 (accepting Dr. Zolli's opinion that "radiation treatment does affect mucous membranes").) Plaintiff asks: "If plaintiff's constant tearing blurs her vision how can she retain 'frequent' (2/3 of the day) acuity for objects near to her? And if the tearing does not affect that near acuity, why is that acuity limited only to 'frequent' instead of the entire 8 hour workday?" ECF No. 15 at 29. The Court shares Plaintiff's confusion and, as a result, cannot meaningfully review whether substantial evidence supports this limitation.

The Court also cannot meaningfully review the RFC limitations attributable to Plaintiff's mental impairments – namely, that she was limited to simple, routine, repetitive tasks; was limited to occasional contact with supervisors, coworkers and general public; and would be off task up to 10% of the workday. As discussed above regarding the ALJ's Step Three analysis, the ALJ's decision omitted relevant evidence from Drs. Roy and Tolchin; failed to explain how the complete

opinions of these consultative examiners impacted Plaintiff's social functioning and concentration, persistence, or pace; improperly discounted certain aspects of the opinions based on lay speculation; and failed to explain how Plaintiff's alcohol consumption impacted her social functioning.

The Court therefore finds that remand is warranted for a new Step Four RFC finding as to limitations attributable to Plaintiff's residual blurred vision from her breast cancer and her mental impairments.[15]

## V.    CONCLUSION

For these reasons, the Court reverses the Commissioner's decision that Plaintiff was not disabled and remands the case to the Commissioner for further proceedings in accordance with the preceding instructions and the accompanying Order.

Dated:   July 18, 2019                              ____s/ Paul A. Zoss____
At Newark, New Jersey                        PAUL A. ZOSS, U.S.M.J.

---

[15] The Court need not address Plaintiff's additional argument that the ALJ erred at Step Five because the hypothetical questions to the VE did not include all credibly established limitations.  This argument restates Plaintiff's criticism of the RFC finding at Step Four, which the Court has already determined requires remand.  *See Rutherford*, 399 F.3d at 554 n.8.